UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-22540-GAYLES/OTAZO-REYES

**INNOVA INVESTMENT GROUP, LLC**,

    Plaintiff,

v.

**VILLAGE OF KEY BISCAYNE**,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant Village of Key Biscayne's Motion to Dismiss Fourth Amended Complaint with Prejudice (the "Motion") [ECF No. 47]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons stated, the Motion is granted.

**BACKGROUND[1]**

**I.    Factual Background**

This action stems from civil penalties imposed by Defendant against a property owned by Plaintiff Innova Investment Group, LLC, for code violations. Plaintiff is the record owner of a 562-square-foot property located at 100 Sunrise Drive, Unit 1, Key Biscayne, Florida (the "Property") with a current market value of $238,450.00 according to the County Property

---

[1] As the Court proceeds on a motion to dismiss, it accepts the allegations in Plaintiff's Fourth Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Moreover, the Court may properly consider the exhibits attached to Plaintiff's Fourth Amended Complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Appraiser. On January 24, 2011, Plaintiff obtained title to the Property through a quitclaim deed, which recorded on September 1, 2011. Plaintiff also owns several other properties in Miami-Dade County, Florida.

On January 18, 2012, Defendant issued an Order Imposing Civil Penalties on the Property based on a technical violation of the municipal code that Plaintiff did not cause. On January 25, 2012, Defendant recorded the Order in the public records and the Order became a lien pursuant to Florida Statute § 162.09(3).[2] Between March 19, 2012, and November 4, 2012, Plaintiff accrued daily fines, as well as interest, totaling $2,195,774.97[3] for failing to cure the violation. On November 5, 2012, Plaintiff cured the violation on the Property, but did not pay the related civil fines. On December 10, 2015, Defendant issued an Order Reducing Civil Penalties, which reduced the civil fines on the Property to $25,000.00 and required payment within 30 days of the Order. [ECF No. 47-2 at 2]. The Order further states that failure to comply would result in the re-imposition of the original amount of civil penalties. *Id.*

In July 2018, a local news channel aired a television segment on a program titled "Help Me Howard" related to Defendant's fines on the Property, casting Defendant in a negative light. After the segment aired, Plaintiff attempted to redress its grievances by petitioning Defendant. Specifically, on July 4, 2018, July 10, 2018, and August 6, 2018, Plaintiff e-mailed Defendant requesting a mitigation hearing as to the civil fines imposed on the Property. [ECF No. 45 at 10–12]. Plaintiff's representative also appeared in person on July 31, 2018, to request a mitigation hearing. *Id.* at 12. However, Defendant did not schedule a hearing at Plaintiff's request. On April 23, 2019, Plaintiff e-mailed Defendant to inquire whether Plaintiff could request another

---

[2] Florida Statute § 162.09(3) states in pertinent part that "[a] certified copy of an order imposing a fine . . . may be recorded in the public records and thereafter shall constitute a lien against the land on which the violation exists and upon any other real or personal property owned by the violator." Fla. Stat. § 162.09(3).
[3] This amount consists of $924,000.00 in daily fines and $1,271,774.97 in interest.

mitigation hearing. [ECF No. 47-1 at 2–3]. On May 9, 2019, Defendant informed Plaintiff that Plaintiff would not be provided another mitigation hearing and that Defendant would not reconsider Plaintiff's case. [ECF No. 45 at 13]; [ECF No. 47-1 at 1].

**II.    Procedural History**

On November 14, 2018, Plaintiff filed this action in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, against Defendant, bringing claims to quiet title and for filing false documents under Florida Statute § 817.535. [ECF No. 1-2]. On January 18, 2019, Plaintiff filed an Amended Complaint, [ECF No. 1-8], and on May 28, 2019, Plaintiff filed a Second Amended Complaint, [ECF No. 1-17]. On June 19, 2019, Defendant removed this action based on federal question jurisdiction as to Plaintiff's claims under 42 U.S.C. § 1983 and supplemental jurisdiction as to Plaintiff's request for declaratory relief. [ECF No. 1]. On October 18, 2019, the Court dismissed the Second Amended Complaint as a shotgun pleading. [ECF No. 18].

On November 7, 2019, Plaintiff filed its Third Amended Complaint, bringing claims for: (1) Eighth Amendment Excessive Fines in violation of § 1983 (Count I); (2) First Amendment Right to Seek Redress in violation of § 1983 (Count II); (3) Fifth Amendment Takings Clause in violation of § 1983 (Count III); and (4) Declaratory Relief (Count IV). [ECF No. 20]. On November 18, 2019, Defendant filed its Motion to Dismiss Third Amended Complaint, [ECF No. 23], which the Court granted with prejudice as to Counts I, III, and IV, and granted without prejudice as to Count II, [ECF No. 37]. On December 9, 2020, Plaintiff sought leave to file a fourth amended complaint, [ECF No. 41], which the Court granted on February 5, 2021, [ECF No. 44]. On February 13, 2021, Plaintiff filed its Fourth Amended Complaint, bringing a single claim for First Amendment Right to Seek Redress in violation of § 1983. [ECF No. 45]. On February 18, 2021, Defendant filed the instant Motion.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

## DISCUSSION

Defendant seeks to dismiss the Fourth Amended Complaint on several grounds. First, Defendant argues that Plaintiff fails to state a First Amendment claim. Second, Defendant argues that Plaintiff fails to allege sufficient facts. Third, Defendant argues that Plaintiff fails to properly allege the factors required under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978). The Court finds that Plaintiff's First Amendment claim pursuant to § 1983 must be dismissed with prejudice because Plaintiff fails to adequately plead its claim.

## I. The Court May Properly Consider the Exhibits Attached to the Motion

Defendant attaches as exhibits to its Motion: (1) the unredacted version of the e-mail exchange that Plaintiff includes as an exhibit to its Fourth Amended Complaint and (2) Defendant's Order Reducing Civil Penalties. *See* [ECF Nos. 47-1 & 47-2]. As the Court proceeds on a motion to dismiss, its review is generally limited to the four corners of the Fourth Amended Complaint. *See Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1236 (S.D. Fla. Sept. 14, 2020) ("[T]he Court's review is generally confined to the four corners of the complaint . . . ."). However, the Court may properly "consider a document attached to a motion to dismiss without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1316 (S.D. Fla. 2020) (citations and internal quotation marks omitted). The Court finds both exhibits are central to Plaintiff's First Amendment Claim and neither exhibit is in dispute. *Faustin v. Mike Pacheco's Lawn Serv., Inc.*, No. 14-CIV-81361, 2015 WL 13779242, at *2 (S.D. Fla. May 29, 2015) (finding pre-suit notice letter attached to response to motion to dismiss central to the plaintiff's complaint and its authenticity not in dispute). Therefore, the Court may properly consider the exhibits attached to Defendant's Motion.

## II. Plaintiff's § 1983 First Amendment Right to Seek Redress Claim

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law committed an act that deprived him of some right protected by the Constitution or laws of the United States." *Lindbloom v. Manatee Cnty.*, 808 F. App'x 745, 749 (11th Cir. 2020) (per curiam). In its Fourth Amended Complaint, Plaintiff alleges that Defendant violated Plaintiff's First Amendment right by preventing it from seeking redress of its grievances in retaliation for the "Help Me Howard" segment. [ECF No. 45 at 5–6 ¶¶ 20–28]. Generally, the First Amendment

protects the right to petition for redress. *Abella v. Simon*, 522 F. App'x 872, 874 (11th Cir. 2013) (per cuiram) (citing U.S. Const. amend. I; *United Mine Workers of Am. v. Ill. State Bar Ass'n*, 389 U.S. 334, 346 (1995)). Moreover, "[r]etaliation against the exercise of First Amendment rights is a well-established basis for section 1983 liability." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016) (citations omitted). However, "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or . . . [to] bargain . . . ." *Smith v. Ark. State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979).

To state a § 1983 First Amendment retaliation claim, a plaintiff must establish that: (1) "his speech or act was constitutionally protected;" (2) "the defendant's retaliatory conduct adversely affected the protected speech;" and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (citations omitted). "Furthermore, when a plaintiff sues a municipality under § 1983, the plaintiff must show that execution of the municipality's policy or custom caused the alleged injury." *O'Boyle*, 187 F. Supp. 3d at 1370 (citing *Monell*, 436 U.S. at 694–95). "A plaintiff's claim depends not on the denial of a constitutional right, but on the harassment received for exercising his rights." *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1343 (S.D. Fla. 2014) (internal quotation marks and alternations incorporated) (quoting *Bennett*, 423 F.3d at 1253).

The Court finds that Plaintiff's First Amendment claim pursuant to § 1983 is insufficiently plead and must therefore be dismissed with prejudice. As to the first prong, neither party disputes that Plaintiff engaged in constitutionally protected speech by participating in the "Help Me Howard" segment and by petitioning for a hearing to redress its grievances related to the civil fines on the Property. Therefore, Plaintiff has satisfied the first prong of the *Bennett* analysis. However, Plaintiff fails to satisfy the second and third prong.

Satisfying the second prong requires the Court to apply an objective "ordinary firmness" test, which holds that a "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254 (citations omitted). Here, Plaintiff alleges that Defendant's retaliatory conduct included either ignoring Plaintiff's request to redress its grievances aired in the "Help Me Howard" segment or refusing to schedule a hearing in violation of Defendant's Administrative Code. [ECF No. 45 at 5 ¶ 21; 6 ¶¶ 24 & 26]. Plaintiff specifically points to Defendant's Administrative Code, which requires Defendant to set a timely request for an administrative hearing on the next regularly scheduled hearing date. *Id.* at 5–6 ¶ 23 (quoting Key Biscayne, Fla., Admin. Code art. III, sec. 2-41(a)).[4] Plaintiff argues that it suffered a deprivation of its First Amendment rights as a result. *Id.* at 6 ¶ 28. However, Plaintiff fails to allege that Defendant's retaliatory conduct deterred Plaintiff from exercising its First Amendment rights or that it would likely deter a person of ordinary firmness from exercising their First Amendment rights. *Cf. Eisenberg*, 1 F. Supp. 3d at 1343.

Moreover, considering the factual allegations in the light most favorable to Plaintiff, the Court cannot say that Defendant's conduct would deter a person of ordinary firmness from exercising its First Amendment rights. First, Plaintiff's argument that Defendant's Administrative Code requires Defendant to set a timely request for a hearing is misplaced. Under the Administrative Code, "[a] Violator who has been served with a Notice shall elect . . . [to] [r]equest an administrative hearing before the Board to appeal the decision of the Code Enforcement Officer

---

[4] The Court takes judicial notice of the Village of Key Biscayne, Florida's Administrative Code. *See Code of Key Biscayne, Fla.*, Officials of the Village of Key Biscayne, Fla. (July 27, 1993), *available at* https://library.municode.com/fl/key_biscayne/codes/code_of_ordinances?nodeId=COKEBIFL. *See also* Fed. R. Evid. 201; *Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) ("Public records are among the permissible facts that a district court may consider." (citations omitted)).

which resulted in the issuance of the Notice." Key Biscayne, Fla., Admin. Code art. III, sec. 2-40(a)(2).[5] Once a violator—such as Plaintiff—receives a Notice and makes a timely request for an administrative hearing, then "the Village Manager or designee shall set the matter down for hearing on the next regularly scheduled hearing date or as soon thereafter as practicable." *Id.* sec. 2-41(a). The Administrative Code does not, as Plaintiff seems to read it, require Defendant to set *any* request a violator makes for an administrative hearing. *See id.* Moreover, the Administrative Code makes clear that "[a] reduction of civil penalty may only be granted once as to any violation," *id.* sec. 2-43(m), which Plaintiff received in December 2015 and failed to pay, *see* [ECF No. 47-2].

Second, Plaintiff fails to argue that Defendant's conduct deterred it from exercising its First Amendment rights or that it would deter a person of ordinary firmness. The factual allegations and exhibits attached to the Fourth Amended Complaint and the Motion make several facts clear. First, Defendant provided Plaintiff with a mitigation hearing, [ECF No. 47-1], which resulted in a reduction in the civil penalties owed, *see* [ECF No. 47-2]. Second, Plaintiff failed to pay the mitigated amount of civil fines and, as a result, Defendant reinstated the original amount of civil fines. *See, e.g.*, [ECF No. 45 at 5 ¶ 20] ("Help Me Howard" segment); [ECF No. 47-1] (noting that Plaintiff "chose to fight the Village rather than comply with the $25,000 mitigation order."). Third, although it is unclear whether Defendant responded to Plaintiff's requests for a mitigation hearing in July and August 2018, *see* [ECF No. 45 at 10–12], this did not deter Plaintiff from again requesting a mitigation hearing in April 2019, *see* [ECF No. 47-1 at 2–3]. Fourth, Defendant responded to Plaintiff's request for a second mitigation hearing, even after the "Help Me Howard"

---

[5] A "Violator" is defined as a "person responsible for a violation of the Code." Key Biscayne, Fla., Admin. Code art. III, sec. 2-31. A "Notice" is defined as "a civil violation Notice issued to a Violator in accordance with the provisions of this article." *Id.* A "Code Enforcement Officer" is defined as "any authorized agent or employee of the Village whose duty it is to ensure compliance with the Code." *Id.*

segment aired. [ECF No. 47-1]. Viewing these facts together, the Court cannot say that Defendant's conduct would deter a person of ordinary firmness from exercising their First Amendment right. *Cf. McDonough v. Mata*, 489 F. Supp. 3d 1347, 1364 (S.D. Fla. 2020) (finding second *Bennett* factor met where plaintiff alleged that police officer "cut short his ability to exercise his First Amendment rights by interrupting his speech and then ordering him to leave the July 27 meeting" and alleging that the police officer "did this in retaliation for his negative comments about the police department."); *Eisenberg*, 1 F. Supp. 3d at 1343 (finding second *Bennett* factor met where defendant, for example, misled plaintiffs through code compliance process, repeatedly cited plaintiffs for code violations, shutdown plaintiffs' property, and arrested one of the plaintiffs for refusing to accept defendant's bribe). Therefore, Plaintiff fails to meet the second prong of the *Bennett* analysis.

As to the third prong of the *Bennett* analysis, Plaintiff must show that its "protected conduct was a motivating factor behind the alleged retaliatory misconduct." *Eisenberg*, 1 F. Supp. 3d at 1344. This requires that Plaintiff show a "sequence of events from which a retaliatory motive can be inferred . . . ." *Id.* (citation and internal quotation marks omitted). The Court will "also consider the temporal proximity between a plaintiff's exercise of free speech and the adverse effect in gauging the causal connection." *Id.* (citation omitted). In the Fourth Amended Complaint, Plaintiff claims that Defendant's "refusal to meet with [Plaintiff] or its representatives was in retaliation for the embarrassing 'Help [M]e Howard' segment." [ECF No. 45 at 6 ¶ 26]. Plaintiff fails, however, to include factual allegations connecting the "Help Me Howard" segment to the retaliatory conduct alleged. Instead, Plaintiff attaches three e-mails with requests for a mitigation hearing sent following the airing of the "Help Me Howard" segment but fails to contextualize the e-mails. For example, Plaintiff fails to explain whether Defendant responded to the e-mail requests, and instead

9

alleges in a conclusory manner that its requests were ignored. Plaintiff also fails to allege any retaliatory actions by Defendant between August 2018, when Plaintiff sent a third mitigation hearing request, and April 2019, when Plaintiff renewed its request for a second mitigation hearing. *Compare* [ECF No. 45 at 10–12], *with* [ECF No. 47-1]. This is likely because during that period, Plaintiff commenced this action against Defendant in state court. *See* [ECF No. 1-2].

Moreover, the temporal proximity between the July 2018 "Help Me Howard" segment and Defendant's May 2019 denial of Plaintiff's request for a second mitigation hearing—almost a year apart—is simply too attenuated to infer a causal connection. *See, e.g.*, *Smith v. Bell*, No. 06-CIV-60750, 2008 WL 868253, at *2 (S.D. Fla. Mar. 31, 2008) (citation omitted) (finding that eighteen months between arrestee calling police officer names and the officer giving alleged false testimony at trial failed to meet the causal connection requirement and noting that "[t]here must be a greater temporal proximity or other evidence of a causal connection . . . ."). Without more, Plaintiff's Fourth Amended Complaint "does not state a plausible causal connection between [its] protected activities and [Defendant's] acts of retaliation." *Carruth v. Bentley*, 942 F.3d 1047, 1062 (11th Cir. 2019) (finding retaliation claim to be "facially implausible" where plaintiff failed to bring forth factual allegations to support a claim of "ongoing and longstanding conspiracy . . . ."). Therefore, Plaintiff fails to meet the third prong of the *Bennett* analysis. Because Plaintiff fails to properly allege its First Amendment claim, Defendant's Motion must be granted.[6]

---

[6] Because Plaintiff fails to properly allege its First Amendment claim in violation of § 1983, the Court need not consider whether it also fails to allege the required *Monell* factors. *See* 436 U.S. 658. However, the Court briefly notes that Plaintiff's Fourth Amended Complaint still fails to allege that Defendant had a custom or policy that caused the First Amendment violation, as required to state a § 1983 claim against a municipality. *See Marantes v. Miami-Dade Cnty.*, 649 F. App'x 665, 672 (11th Cir. 2016) (per curiam).

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Village of Key Biscayne's Motion to Dismiss Fourth Amended Complaint with Prejudice, [ECF No. 47], is **GRANTED**.

2. Plaintiff's Fourth Amended Complaint is **DISMISSED with prejudice**.

3. This case is **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 30th day of April, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE